Judgment rendered August 23, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,335-JAC

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA
IN THE INTEREST OF
Z.J., M.J.

* * * * *

Appealed from the
Fifth Judicial District Court for the
Parish of Richland, Louisiana
Trial Court No. J-2021-30

Honorable Clay Hamilton, Judge

* * * * *

VARHONDA E. BURRELL   Counsel for Appellant,
  L.D.B., Father of Z.J.


SHIRLEY GUILLORY GEE   Counsel for Appellee,
Assistant District Attorney   State of Louisiana


DEPARTMENT OF CHILDREN   Counsel for Appellee,
AND FAMILY SERVICES   State of Louisiana, DCFS
By: Keesha Mason Bordelon


LEGAL AID OF NORTH LOUISIANA   Counsel for Appellees,
By: Elizabeth Clement Brown   Z.J. & M.J., Children


CARMEN ELYSE RYLAND   Counsel for Appellee,
  L.J., Mother of Minor
  Children

* * * * *

Before STONE, THOMPSON, and HUNTER, JJ.

HUNTER, J., dissents with written reasons.

**STONE, J.**

## INTRODUCTION

This appeal arises from the Fifth Judicial District Court, the Honorable Clay Hamilton presiding. Lorenzo Bee (the "appellant") is biologically the father of the minor child, Z.J., who was born in 2019. Apparently, Z.J. is an older half-sibling of M.J., the other minor child involved herein, who was born with cocaine in her system in 2021. (M.J. and Z.J. are collectively referred to herein as "the children"). After learning of M.J.'s subjection to cocaine in her mother's womb, the DCFS removed Z.J. and M.J. from the custody of their parents, had the children adjudicated in need of care, filed and obtained approval of the case plan, and gave the parents opportunity to complete the case plans. After the children had been in state custody for more than a year and the parents demonstrated failure to follow their case plans, the DCFS filed a petition to terminate parental rights to clear the children for adoption. After a trial, the court terminated the all parental rights to Z.J. and M.J. This judgment named the biological mother, another man, and the appellant as parties whose parental rights were terminated.

Only the appellant, Lorenzo Bee, appeals; he urges two assignments of error: (1) he was denied due process in that the court refused to allow him to testify when he left the courtroom during trial – then left the area without informing the court – and reappeared to testify after the court had already ruled on the case; and (2) the judgment is invalid because the children were not in custody of the DCFS for at least one year prior to the filing of the petition to terminate parental rights.

## FACTS

On August 10, 2021, after learning that M.J. was born with cocaine in her system, the state obtained an instanter order removing the children from parental custody and placing them in the care and custody of the state. On October 28, 2021, the court rendered a judgment adjudicating Z.J. and M.J. in need of care and ordering that the children remain in the custody of the DCFS. The October 28, 2021, judgment also approved the DCFS' proposed case plans for the parents. This initial case plan had the goal of reunification after the mother and appellant completed parenting classes and domestic violence counseling, as well as treatment for their drug addiction and mental health problems.

The appellant and mother repeatedly failed to work their case plans and showed no significant improvement; on the contrary, they repeatedly tested positive for illegal drugs such as cocaine, methamphetamine, and marijuana (or refused testing) while under the case plan. The appellant completed inpatient rehab, but relapsed shortly thereafter and began refusing drug tests because he said there was no point in testing: he admitted he would test positive for methamphetamine. The appellant, who was diagnosed with schizophrenia and bipolar disorder, was banned from two different mental health programs because he was loud, aggressive, and frightened people there. The appellant does have a residence; however, it is cockroach-infested and is a place of habitual narcotics use. The mother is somewhat of a resident of the appellant's household; the appellant beats her, frequently kicks her out of the house, and forces her to watch him have sex with other women under threat of physical violence if she turns her head to avoid watching. Furthermore, the appellant does not work, does not provide

monetary support for the children, is habitually drunk, and is manifestly incapable of providing for Z.J.'s basic material needs.

On December 28, 2022, the DCFS filed a petition to terminate parental rights to M.J. and Z.J. and named the appellant as a respondent thereto. On February 16, 2023, the court held a hearing on the matter and granted judgment as prayed for by the DCFS. The appellant attended the hearing. During his attorney's cross-examination of the DCFS caseworker (the state's witness), the appellant interrupted with outbursts accusing the witness of lying. With his attorney's permission, the court permitted the appellant to go outside the courtroom to wait until the cross-examination ended. However, when the time came, the appellant was nowhere to be found – the bailiff reported that the appellant had left. As a result, the appellant's attorney had no witness to call, and rested the appellant's case. The court orally ruled on the matter, terminating all parental rights to the children. Thereafter, the court and attorneys took up sundry housekeeping matters, and during that discussion, the appellant returned to the courtroom and indicated he wanted to testify on his own behalf. The court refused to reopen the case to allow the defendant to testify (after he disappeared during his regular opportunity to do so).

The appellant asserts that the trial court's judgment terminating his parental rights is erroneous because: (1) the trial court violated appellant's due process rights when, during the hearing on termination of his parental rights, it allowed appellant to leave the courtroom upon his request (and with the consent of his lawyer), and refused to allow him to testify when he returned after the trial was over and the court had already given an oral ruling; and (2) according to the appellant, the DCFS was not in custody of

3

the children for a full year as of the time of the judgment terminating parental rights, and therefore, the termination was invalid.

## DUE PROCESS

"Parental rights do not spring full-blown from the biological connection between parent and child." *Caban v. Mohammed*, 441 U.S. 380, 397, 99 S. Ct. 1760, 1770, 60 L. Ed. 2d 297 (1979) (Stewart, J., dissenting). Instead, a biological father must demonstrate "a full commitment to the responsibilities of parenthood by coming forward to participate in the rearing of his child" before "his interest in personal contact with his child acquires substantial protection under the due process clause." *Lehr v. Robertson*, 463 U.S. 248, 261, 103 S. Ct. 2985, 2993, 77 L. Ed. 2d 614 (1983). The Louisiana Supreme Court, in *Matter of R.E.*, stated

[U]nder the circumstances herein the unwed father does not have a fully established protected right to a parental relationship with his child until he demonstrates his fitness and commitment according to the standards provided by law and our decisions. Due process guarantees him notice, hearing and an adequate opportunity to make such a showing; it does not require, however, that he be presumed fit and committed to parental responsibilities or that the burden of proving otherwise be allocated to the parties supporting the surrender and adoption of the child

*Matter of R.E.*, 94-2657 (La. 11/9/94), 645 So. 2d 205, 208.

Assuming *arguendo* that the appellant has established his paternal due process rights in accordance with the *Lehr, supra,* (which is a quite charitable assumption), the appellant's due process rights were not violated. The appellant clearly was given the *opportunity* to testify on his own behalf according to regular trial procedure. He did not, however, use that

opportunity. Instead, without providing notice to the trial judge, the appellant absquatulated from the trial at the precise time when his testimony was to be given. Accordingly, this assignment of error lacks merit and is rejected.

## GROUNDS FOR TERMINATION OF PARENTAL RIGHTS

La. Ch.C. art. 1015(6) allows termination of parental rights if: Unless sooner permitted by the court, [1] at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; [2] there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and [3] despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

The DCFS obtained an instanter order on August 10, 2021, whereby the children were removed from parental custody; several interim orders continuing the children in DCFS custody were rendered thereafter. It was not until December 28, 2022, that the DCFS petitioned for the termination of parental rights, and the judgment terminating those rights was not rendered until March 16, 2023. The children were in continuous legal custody of the DCFS for more than one year prior to the rendition of the judgment terminating parental rights. (Furthermore, the DCFS allowed the appellant more than a year to work his case plan before it filed for termination of his parental rights). Therefore, this assignment of error is without merit and is rejected.

5

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is

**AFFIRMED**.  All costs of this appeal are taxed to the appellant.

**HUNTER, J., dissenting.**

In an involuntary termination of parental rights proceeding, courts must proceed with care and caution, as the permanent termination of the legal relationship existing between natural parents and the child is one of the most drastic actions the State can take against its citizens. *State ex rel. J.A.*, 99-2905 (La. 1/12/00), 752 So. 2d 806.

The sole witness to testify at the hearing was the DCFS caseworker. Her testimony contained hearsay testimony, most of which the mother allegedly told her. Additionally, there was no testimony or meaningful inquiry into the "best interests of the child."

This father has struggled with long-term substance abuse and mental health issues, and I agree reunification is not in the child's best interests at this time. However, I have serious reservations about the State's subpar effort in proving the grounds for termination, as well as the trial court's unwillingness to allow the father to testify.

In light of the dire consequences of a termination proceeding, I would reverse the trial court's judgment. The record shows the father exited the courtroom to calm himself down, and no meaningful effort was made to ascertain his whereabouts. The court could have easily ordered a short recess to, at the very least, attempt to locate the father, or it could have allowed him to testify after he returned.

1